# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. _____

DOLORES CALICCHIO,

    Plaintiff,

vs.

**DEMAND FOR JURY TRIAL**

OASIS OUTSOURCING GROUP
HOLDINGS, L.P. and PAYCHEX NORTH
AMERICA INC.,

    Defendants.

_____/

## COMPLAINT

Plaintiff Dolores Calicchio ("Plaintiff"), by and through undersigned counsel, as and for her complaint against Defendant Oasis Outsourcing Group Holdings, L.P. and Defendant Paychex North America Inc. (collectively "Defendants") alleges as follows:

## NATURE OF THE ACTION

1.    Plaintiff brings this action against Oasis Outsourcing Group Holdings, L.P. and Paychex North America Inc. for violation of the Equal Pay Act, 29 U.S.C. § 206, gender discrimination in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e) ("Title VII") and retaliation for complaining about gender discrimination in violation of Title VII.

## PARTIES

2.    Plaintiff is an accomplished Human Resources executive, residing in the State of Florida.

3.    Defendant Oasis Outsourcing Group Holdings, L.P. ("Oasis") is formed under the laws of the State of Florida.  Oasis is a leading Professional Employer Organization ("PEO"), providing outsourced human resources, employee benefits, payroll and risk management services.

4. Defendant Paychex North America Inc. ("Paychex") is incorporated under the laws of the State of Delaware with its principal place of business and headquarters located in Rochester, New York. Paychex is a leading provider of outsourced payroll, benefits, human resources, and insurance services.

5. In December of 2018, Paychex acquired Oasis through a merger valued at approximately $1.2 billion. Following the merger, Oasis became branded as "A Paychex Company."

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

7. Venue is proper in the United States District Court for the Southern District of Florida under 28 U.S.C. § 1391(b)-(c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district and Defendant Oasis maintains its headquarters and principal place of business within the district.

## ADMINISTRATIVE PROCEDURES

8. Plaintiff has filed a charge with the Equal Employment Opportunity Commission ("EEOC") for discrimination and retaliation.

9. Any and all other prerequisites to the filing of this suit have been met.

## FACTS COMMON TO ALL COUNTS

10. Plaintiff began working for Oasis in January 2017. Plaintiff has over 15 years of experience holding executive level human resources positions. She was hired by Oasis to be its Chief Human Resources Officer ("CHRO") and an Executive Vice President ("EVP"). She held those titles throughout her employment at Oasis and reported throughout to the Chief Executive Officer, Mark Perlberg ("CEO").

11. Perlberg was directly involved in hiring Plaintiff. He told her that her skills were a particularly good match for Oasis at that juncture because the company was looking to continue to grow. He said the CHRO role would be essential in leading the company's acquisition of talent, including increasing the number of sales representatives in order to significantly impact organic sales for increased revenue streams. She, along with recently hired Chief Operating Officer ("COO"), would be responsible for critical company growth areas including improving retention of key employees, training employees for improved client satisfaction, and EBITDA growth.

12. This much of Perlberg's representations turned out to be true. Plaintiff did this and much more. In addition to the above, Plaintiff was responsible for integrating acquired companies and its employees into the Oasis culture, process, policy, and function, rightsizing and organization effectiveness and efficiency. An equally important, and critical function of Plaintiff's role, was preparing the company to position itself to be acquired (which it ultimately was, by Paychex) and increasing the company's value to potential buyers in accomplishing strategic goals.

13. Plaintiff performed these functions very well. As a result, she became an essential member of the Senior Strategic Team and heavily involved in the due diligence work required to sell the company. Specifically, in her role as CHRO/EVP, she was one of the top 4 executives in the organization. She, along with the CEO, Chief Financial Officer ("CFO"), and the COO, made up the Senior Strategic Team. Plaintiff was the only woman of the group. Further, she was one of only three executives (and the only woman) to report directly to CEO Perlberg. Perlberg had her report directly to him as he understood the importance of the CHRO role given the company's twin goals of organic growth and driving up value to potential acquirers.

14. In the hiring process, Perlberg also told Plaintiff that her offer would be on par with the COO. He said that when she came on board, she would see that she and the COO would be paid comparatively. This turned out to be false.

15. In fact, Plaintiff was compensated less than her male peers on every count. She was paid less in salary and in bonus and received less equity interest.

16. To take one example, the COO, a man, received $450,000 in bonus compensation for 2017 and 2018. Plaintiff received less than half that amount for the same period.

17. The disparity is even more glaring with respect to equity grants. Oasis issued Incentive Common Unit awards to certain employees (the "Units"). Through these Unit grants, the employees would earn a vested right to certain compensation upon, among other things, a sale of Oasis to an acquirer such as Paychex. Unsurprisingly, the more Units awarded to an employee, the more cash that employee would receive as a result of the sale of Oasis.

18. Plaintiff was granted less than half the number of Units granted to her male peer, the COO. Upon Oasis' sale to Paychex this resulted in the COO receiving $1,964,775 more in cash compensation from the Units than Plaintiff.

19. Furthermore, and unbeknownst to Plaintiff, the COO was also granted a special severance benefit associated with the sale of Oasis resulting in an additional severance benefit payment to him of $710,610. This benefit was granted in December of 2018 shortly before the close of the sale of Oasis to Paychex. The COO was not the only employee to receive a special severance benefit. He was one of six men to receive such benefit. All six men receiving a special severance benefit were members of the executive team, just like Plaintiff. Yet Plaintiff, an equally important member of the executive team, a member of the Sr. Strategic Team (and the only female), and the only Chief Officer/EVP reporting to the CEO, who was essential to the sale of the company, was excluded from receiving any special severance or other payment.

20. All told, between salary, bonus, Units and special severance benefits, the COO was paid $2,951,275 more than Plaintiff over the same two-year period.

21. There is no question that the work performed by Plaintiff was at the very least substantially equal to that performed by the COO. Both Plaintiff and the COO were the leaders and highest ranking employees of their respective departments. They were hired by Oasis within 4 months of each other and have comparable work and educational experience. Both reported into the CEO and worked out of Oasis' West Palm Beach, Florida headquarters. They also shared the same common core of duties. For example, one of the key strategic goals of the company in 2018-2019 was "core organic growth" *i.e.*, growth through sales and marketing, better client service and therefore retention, and improved risk management. The members of the Sr. Strategic team mentioned above (the CEO, CFO, COO, and Plaintiff) the primary executives responsible for these initiatives. In particular, Plaintiff and the COO were equally accountable to ensure these initiatives were met.

22. In addition, both Plaintiff and the COO (as well as other executive team leaders) were tasked with improving "culture and accountability" – another key strategic growth area cited by the company for 2018. This included improving Oasis' operating model, regionalizing the company, increased employee engagement, and increasing return on investment accountability. Both Plaintiff and the COO were responsible for this key company initiative in approximately equal measure.

23. Another area where Plaintiff and the COO shared common duties was through acquisition integration. As noted above, Oasis sought to acquire smaller PEO companies to make itself attractive to larger acquirers. Plaintiff was responsible for overseeing such integrations on the human resources side, *i.e.*, policies, practices, payroll, etc. Plaintiff accompanied the CEO on the initial communication with the employees at the time of the acquisition and participated with the CEO in discussions of retention and separation of key personnel. The COO was not part of

the acquisition activities or purchase.  Later, the responsibility of integrating the operations of smaller PEO companies rolled up through the COO.

24. Moreover, in many ways Plaintiff's position held a more extensive purview and responsibilities than the COO.  Plaintiff was one of only three EVPs in the company.  The COO was not.  Plaintiff was one of three top executives charged with leading the company through the process of its sale to Paychex.  The COO was not among that group.

25. Particularly telling is the fact that when the sale to Paychex appeared to be faltering, the CEO and the CFO did not call upon the COO to fix the problem.  They called on Plaintiff – on Thanksgiving Day no less.

26. On the eve of Thanksgiving 2018, Plaintiff received a call at home from CEO Perlberg.  He told her that Paychex was not prepared to move to closing the deal because Oasis had not provided satisfactory information on key components (outside of Plaintiff's purview). Plaintiff went to the office that night and worked up additional information for Paychex.  The next day, Thanksgiving, Oasis' CFO called Plaintiff at home to say that Oasis still had a problem and asked her to work with the Controller and other analyst type personnel.  Once again, Plaintiff left her family and spent Thanksgiving Day and the next morning to go to the office and prepare information for Paychex.  The information was delivered by 9:30 a.m. on the Friday after Thanksgiving and the deal moved to closing.

27. Further, Plaintiff was instrumental in integrating the companies Oasis had acquired. This was no small feat as it required integrating seven acquired entities into Oasis. Plaintiff was part of the team for integrating the hundreds of thousands of client employees the company served into the infrastructure of Oasis. Without retaining essential employees, Oasis would have lost essential clients.  There is no doubt that the successful acquisition and integration spree Oasis embarked on in the two years leading up to its sale to Paychex at the end of 2018 is what drove

the lion's share of the value. When Paychex acquired Oasis, the deal was valued at in excess of $1.2 billion.

28. Not only was the COO receiving more in compensation than Plaintiff, it turns out that other men were receiving more compensation even though they held positions *lower* than Plaintiff's position. At least two other male executives -- the Chief Marketing Officer ("CMO") and Chief Information Officer ("CIO") -- were compensated more highly than Plaintiff in bonus and Units even though they did not report to the CEO. And, again, there is no question that the work performed by Plaintiff was at least substantially equal to that of the CIO, and substantially higher than that performed by the CMO. These men, like Plaintiff, were heads of their respective departments and although with narrower overall responsibilities and were jointly responsible for key strategic initiatives common to Plaintiff, *i.e.*, core organic growth (the CMO) and culture and accountability (the CIO).

29. Moreover, Oasis paid cash bonuses to the CIO and the Controller (both male) in connection with the due diligence process and ultimate sale of Oasis to Paychex. These bonuses were paid out of a pool intended to go to non-Unit holders. Both the CIO and the Controller held Units, yet were still paid bonuses out of this pool. Plaintiff, who also played a key role with the Controller in the sale, working day and night and through Thanksgiving, and whose performance with respect to the sale far exceeded the CIO's, received no additional bonus from this pool.

30. Defendants' unfair treatment of Plaintiff did not end with its Equal Pay violations. When Plaintiff became aware of the substantial inequity, she raised the issue directly with CEO Perlberg in a one on one conversation. Perlberg became angry with Plaintiff telling her in no uncertain terms that he thought it was unprofessional for her to raise the issue and that she should be grateful for the way he had treated her. Plaintiff raised the issue again with Perlberg in a subsequent discussion, but was met again with inaction.

31. Shortly following these discussions with Perlberg, Paychex went about the task of considering Oasis employees, whose positions would be eliminated as a result of the merger, for other positions at Paychex or Oasis. Plaintiff had expressed her interest in such a position. Shortly after her complaint to Perlberg discussed above, Defendants announced that an employee with no Human Resources experience prior to joining Oasis would be filling the role of Director of Centralized Services. This position was client-facing role focused on human resources and benefits services – a position for which Plaintiff was unquestionably well-qualified. Tellingly, Defendants did not include Plaintiff as a recipient of this announcement. The fact is that Defendants did not even make Plaintiff aware that the position was open much less invite her or include her in interviewing for the position. This despite the fact that Defendant Paychex had pledged to consider Oasis employees for such positions.

32. Plaintiff again raised her concern about this treatment to CEO Perlberg, as well as several Paychex executives. Yet, again, nothing happened. No investigation was conducted. Indeed, the Paychex Director of Recruiting could not even explain to Plaintiff why she was not considered for the position but said she would look into it and follow up with Plaintiff. She never did. Indeed, even when Plaintiff followed up again on the issue, she received no response and her employment was terminated on May 31, 2019.

## COUNT I
### (VIOLATION OF THE EQUAL PAY ACT)

33. Plaintiff hereby incorporates by reference Paragraphs 1 to 32 as though fully set forth herein.

34. Plaintiff is a woman.

35. Plaintiff performed equal work in a job requiring equal skill, effort, and responsibility as certain men employed by Oasis, including but not limited to the COO, and performed such job under similar working conditions.

36. Oasis treated Plaintiff's compensation differently than it treated the compensation of men, including, but not limited to, Plaintiff's salary, bonus and Units.

37. Oasis did not treat Plaintiff's compensation differently based (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

38. Plaintiff suffered damages as a result of Oasis' violation including the loss of salary, bonus and Units.

39. By reason of Oasis' conduct as alleged herein, Plaintiff is entitled to all remedies available under the Equal Pay Act, including but not limited to compensatory damages for lost salary, bonus and Units in the form of back pay, interest, attorneys' fees, and liquidated damages in an amount equal to 100% of the compensatory damages.

40. Defendant Paychex is jointly liable as Oasis successor in interest.

## COUNT II
## (GENDER DISCRIMINATION VIOLATION OF TITLE VII)

41. Plaintiff hereby incorporates by reference Paragraphs 1 to 32 as though fully set forth herein.

42. Plaintiff is a member of a protected class (female).

43. Plaintiff was qualified for her job and performing it satisfactorily.

44. Plaintiff suffered an adverse employment action. Among other things, Plaintiff's employment was terminated and she was denied opportunities for further employment following Paychex's acquisition of Oasis due to Defendants' discrimination against Plaintiff. She was also denied, salary, bonus and Units by Oasis.

45. Plaintiff's gender was at a minimum a motivating factor in Defendants' adverse actions against Plaintiff.

9
LEÓN COSGROVE, LLP
255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

46. Defendants' stated reason for the adverse action(s) is a pretext to hide gender discrimination.

47. Plaintiff suffered damages as a result of the Defendants' violation including the loss of salary, bonus and Units.

48. Plaintiff further suffered emotional distress and humiliation.  Further, Defendants acted with malice and/or reckless disregard for Plaintiff's rights thus rendering punitive damages appropriate.

49. By reason of the Defendants' conduct as alleged herein, Plaintiff is entitled to all remedies available under Title VII, including but not limited to lost wages and benefits in the form of back pay, front pay in lieu of reinstatement, interest, attorneys' fees, interest and costs, compensatory damages, emotional distress damages and punitive damages, all in amounts to be determined at trial.

## COUNT III
### (RETALIATION IN VIOLATION OF TITLE VII)

50. Plaintiff hereby incorporates by reference the preceding Paragraphs 1 to 32 as though fully set forth herein.

51. Plaintiff engaged in protected activity by, inter alia, complaining to Oasis and Paychex executives about gender discrimination and equal pay violations.

52. Defendants were aware of such protected activity because Plaintiff directly complained to their executives.

53. Because of Plaintiff's protected activity, Oasis and Paychex took adverse employment actions against her, namely, refusing to consider her for other positions and terminating her employment.

54. Plaintiff suffered emotional distress and humiliation as a result of Defendants' conduct. Defendants' conduct was engaged in with malice or reckless disregard for Plaintiff's rights. Accordingly, punitive damages are warranted.

55. As a result of Defendants' conduct, Plaintiff has suffered and is entitled to recover damages, including lost back wages and benefits, including the value of lost equity, lost future earnings and benefits, including the value of equity interests, compensatory damages for emotional distress, punitive damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby prays for judgment against Defendants on all causes of action and for recovery as follows:

   a. Economic damages for past lost salary, bonus, Units and benefits and future lost and benefits (including the value of equity interests) in an amount to be proven at trial;

   b. Liquidated damages pursuant to statute;

   c. Damages for emotional distress and humiliation in an amount to be proven at trial;

   d. Punitive damages in an amount to be proven at trial;

   e. Prejudgment interest;

   f. Attorneys' fees and costs pursuant to statute; and

   g. For such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues triable by jury in this action.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

Dated: September 19, 2019         Respectfully Submitted,

By: *s/James R. Bryan*
    James R. Bryan, Esq.
    Florida Bar No. 696862
    LEÓN COSGROVE LLP
    255 Alhambra Circle, Suite 800
    Coral Gables, Florida  33134
    Telephone:  (305) 740-1975
    Facsimile:   (305) 437-8158
    Email:  jbryan@leoncosgrove.com
    Email:  lburns@leoncosgrove.com

Seth Rafkin, Esq.
New Jersey Bar No. 5026554
Rafkin Esq. PLLC
1201 Sussex Turnpike, Suite 102
Randolph, New Jersey  07869
Telephone:  973.891.3370
Email: srafkin@rafkinesq.com
(To Be Admitted *Pro Hac Vice*)

*Attorneys for Plaintiff Dolores Calicchio*